Filed 8/15/24  In re Kylie A. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re Kylie A., a Person Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent, v. S.A. et al., Defendants and Respondents; Kylie A., Appellant. | F087565 (Super. Ct. No. 20CEJ300080-2) OPINION |

### THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Amythest Freeman, Judge.

Jamie A. Moran, under appointment by the Court of Appeal, for Appellant.

No appearance by Respondents.

-ooOoo-

---

[*]    Before Franson, Acting P. J., Meehan, J. and Snauffer, J.

## INTRODUCTION

The minor, Kylie A., appeals from the juvenile court's findings and orders made at the contested Welfare and Institutions Code section 388[1] hearing January 9, 2024, removing Kylie from her de facto parents and placing her with paternal aunt L.P. While Kylie's appeal was pending, the juvenile court returned Kylie to father Steven A.'s custody under family maintenance services. We find Kylie's appeal moot and dismiss the appeal.

## PROCEDURAL AND FACTUAL HISTORY

The Fresno County Department of Social Services (department) filed a section 300 petition on June 17, 2022, alleging Kylie, then six months old, was at risk of harm due to mother Ashley A.'s substance abuse and exposure to domestic violence in the home. Kylie was removed and placed temporarily in the care of her maternal grandmother.

The department recommended against offering mother services, as she had had her parental rights terminated as to Kylie's half sibling, Liam. A maternal aunt, A.F., had recently finalized adoption of Liam, but was reluctant to take placement of Kylie, as mother had made the process with Liam difficult.

Kylie was moved into placement with a resource family and the department recommended she be adopted by the current caregivers or placed with a willing relative "should such a relative be identified." Paternal aunt, L.P., requested placement of Kylie and been given information for "Resource Family Approval (RFA) Orientation," but as of the writing of the jurisdiction/disposition report, L.P.'s application had not yet been submitted to the RFA unit.

At jurisdiction on August 1, 2022, the juvenile court made true findings on the allegations of the department's petition and ordered the matter continued for a disposition

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

2.

hearing on November 7, 2022. The juvenile court did not make any order regarding placement.

On August 18, 2022, the department requested mother's visits be suspended, as she had been under the influence at a visit, refused to give Kylie back at the end of the visit, and threatened to abscond with her. On September 7, 2022, the juvenile court ordered mother's visits suspended and granted the department discretion to begin intensive visits.

In the November 2022 addendum disposition report, the department recommended against placing Kylie with father as he was incarcerated at the time and had not ameliorated the protective issues that resulted in Kylie being detained.

The RFA unit was advised of six "relative/mentor adults" who had applied for placement of Kylie. All would need to apply for "Criminal Exception Waivers" for possible placement. L.P. indicated that she worked fulltime and would rely on paternal grandmother to provide care for Kylie. However, paternal grandmother indicated that father would live with her upon his release from custody. No relative had yet completed the RFA application.

On November 21, 2022, father filed a section 388 petition indicating that he wanted to change the court's order at the detention phase of the case and asked that L.P. or paternal grandmother be considered for placement pursuant to section 361.3.

Disposition was held December 5, 2022, at which time Kylie was removed from parental custody, placed in foster care, and the department ordered to provide reunification services for father; mother was bypassed for services. The juvenile court declined father's request for placement and indicated it had considered placement with relatives, but could not make a determination at that time. A further hearing on placement was set for January 30, 2023.

On January 17, 2023, a department investigator went to paternal grandmother's home to conduct an assessment at the request of Kylie's counsel. Several people were

living in the home who had not submitted their information to the department. Paternal grandmother stated she had submitted to a Live Scan, but that her home had not been assessed by the "Home Approval Unit." Paternal grandmother had a criminal history from 30 years prior, but no other criminal or child welfare history.

The department's January 30, 2023, addendum report stated that mother did not want Kylie placed with L.P. At this point, L.P. had not yet provided the necessary information for RFA approval, and there were necessary exemptions for placement with L.P. that had not as yet been obtained.

On March 2, 2023 the juvenile court ordered father's section 388 petition set for hearing. The petition was denied on March 15, 2023, and father appealed.

In its July 24, 2023, review report, the department recommended terminating reunification services for father and setting a section 366.26 hearing. Father had been released from custody and was living with paternal grandfather. He was reported to be in compliance with his probation. Kylie was reported to be struggling with transitions related to father's visits. Kylie was having unsupervised visits with L.P. and paternal grandmother.

Kylie remained in placement with the same resource family. She was healthy and developmentally on target. The caregivers reported having to sooth Kylie at night, due to night terrors.

On July 24, 2023, the juvenile court denied the department's motion to designate the caregivers as the prospective adoptive parents, finding the request premature. The caregivers were granted de facto parent status.

L.P. filed a "Relative Information" document with the juvenile court on July 31, 2023, requesting all available information about Kylie. According to L.P., she had been requesting placement of Kylie since she was first detained. She further stated she would be willing to adopt Kylie.

4.

L.P. filed a section 388 petition on August 25, 2023, indicating that she wished to change the juvenile court's order at detention refusing to make placement decisions that day. L.P. sought placement of Kylie under the relative placement preference. Her petition was supported by a 53-page declaration, detailing her efforts to have Kylie placed with her, interaction with the social workers, and the nature of her visits with Kylie. The documents included telephone records, text messages, e-mails, photographs, and letters supporting her placement of Kylie. The matter was set for a prima facie hearing on September 11, 2023.

Kylie's counsel filed an opposition to L.P.'s section 388 petition, arguing that Kylie had developed a strong bond with her caregivers over the 15 months she had been with them. Kylie asked the juvenile court to renew the March 2023 order denying L.P. placement.

On September 11, 2023, the section 388 contested hearing was set for October 20, 2023. On October 20, 2023, L.P. was granted additional visits with Kylie, as well as some make-up visits. The section 388 hearing was set for December 1, 2023.

In an opinion filed November 28, 2023, (*In re Kylie A.* (Nov. 28, 2023, F086194) [nonpub. opn.]), this court affirmed the juvenile court's placement findings and orders that were the subject of father's appeal.

The contested section 388 hearing took place December 1 and 11, 2023, and concluded January 3, 2024. On January 9, 2023, the juvenile court granted L.P.'s section 388 petition and ordered Kylie be gradually transitioned into placement with her.

Kylie filed a notice of appeal on January 29, 2024. Her argument on appeal in her opening brief filed April 17, 2024, is that the juvenile court erred in finding it would be in her best interests to be removed from the caregivers' home with the only parents she had ever known and placed with L.P. Kylie requests that the section 388 petition be reversed and she be returned to her caregivers. In the alternative, Kylie requests that the case be

remanded with instructions for the juvenile court to conduct a new hearing on L.P.'s petition.

On May 17, 2024, the department filed a motion to dismiss the appeal as moot. Attached to the motion was a minute order from the six and 12-month review hearing April 4, 2024, indicating that the juvenile court ordered Kylie to remain a dependent of the court and be returned to father on family maintenance services.[2]

On May 20, 2024, mother joined in the department's request for dismissal of the appeal, as the order appealed from was no longer "operative", having been superseded by the order placing Kylie with father.

On May 23, 2024, this court granted Kylie 15 days' leave to file an informal response to the department's motion to dismiss. No response was received from Kylie.

## DISCUSSION

The department argues in its motion to dismiss that the appeal is moot as to Kylie because she has been returned to the care of a parent, and "she is no longer in need of placement." As argued by the department, while Kylie's placement was ripe for review at the time the notice of appeal was filed on January 29, 2024, developments in the ongoing case have rendered the requested relief unfeasible at this time. Kylie appeals the order made at the contested section 388 hearing January 9, 2024, to place her with paternal aunt, L.P., which effectively removed Kylie from the de facto parents who had cared for her since July of 2022. However, on April 4, 2024, the juvenile court found father had made significant progress toward alleviating or mitigating the cause necessitating placement in foster care and ordered that Kylie be placed with father while he be provided family maintenance services.

---

[2] We will take judicial notice of the orders of the juvenile court dated April 4, 2024, April 24, 2024, and May 8, 2024. (Evid. Code, §§ 459, subds. (a)-(c), 452, subd. (d).)

6.

A minor may be subsequently removed from a parent's custody while receiving family maintenance services if the department files a supplemental section 387 petition with the juvenile court. Here, such a petition was filed to remove Kylie from father's care. However, the section 387 petition was dismissed May 8, 2024, and all prior orders not modified remained in full force and effect. A family maintenance review hearing and exit mediation remained calendared for July 10, 2024.

"Due to the dynamic nature of juvenile dependency proceedings, a subsequent order of the juvenile court may render an issue on appeal moot." (*In re M.F.* (2022) 74 Cal.App.5th 86, 110.) " '[A]n action that originally was based on a justiciable controversy cannot be maintained on appeal if all the questions have become moot by subsequent acts or events. A reversal in such a case would be without practical effect, and the appeal will therefore be dismissed.' " (*In re Dani R.* (2001) 89 Cal.App.4th 402, 404.) "The critical factor in assessing mootness is whether the appellate court can provide any effective relief if it finds reversible error or if the purported error affects the outcome of subsequent proceedings." (*In re M.F.*, *supra*, at p. 111.)

We agree with the department that Kylie's appeal is moot as a result of the juvenile court's April 4, 2024, orders. If we were to proceed with the appeal and find that the juvenile court erred in placing Kylie with L.P., Kylie would remain in her father's care regardless of this court's disposition. Thus, no effective relief can be offered to Kylie through this appeal as a remand would have no practical effect. Dismissal is warranted. (*In re Dani R., supra,* 89 Cal.App.4th at p. 404.)

## DISPOSITION

The department's motion to dismiss is granted. The appeal is dismissed.